UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

(1) EUGENE MAURICE CLANTON,

    Defendant.

**MEMORANDUM OF LAW & ORDER**
Criminal File No. 10-333 (MJD/FLN)
Civil File No. 12-1826 (MJD)

Thomas M. Hollenhorst, Assistant United States Attorney, Counsel for Plaintiff.

Eugene Maurice Clanton, pro se.

## I. INTRODUCTION

This matter is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Docket No. 36] and on his Motion to Amend or Supplement [Docket No. 45].

## II. BACKGROUND

On December 14, 2012, Petitioner Eugene Maurice Clanton was indicted on one count of being a felon in possession of a firearm and ammunition in violation

of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), Armed Career Criminal. [Docket No. 1] On February 11, 2011, he pled guilty to the indictment. [Docket No. 21]

Clanton was sentenced on July 21, 2011. At the sentencing hearing, neither party objected to the Guideline calculations in the Presentence Investigation Report, which calculated that Clanton was an Armed Career Criminal and that his Guideline range was 188-235 months, based, in part, on his prior felony convictions of second degree assault in violation of Minnesota law on November 9, 1995; third degree sale of a controlled substance in violation of Minnesota law on April 25, 2002, and conspiracy to possess with intent to distribute cocaine base in violation of federal law on September 21, 2005. (PSI ¶¶ 37, 41-42.) The Court sentenced Clanton to 224 months in prison.

Clanton did not appeal his sentence. He has now filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [Docket No. 36] He has also filed a Motion to Amend or Supplement. [Docket No. 45]

III. DISCUSSION

    A.    **Standard for Relief under 28 U.S.C. § 2255**

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted). Alternatively, the procedural default can be excused if the defendant is actually innocent. Bousley v. United States, 523 U.S. 614, 622 (1998).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the motion and the files of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

> [A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.

Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

### B. Ineffective Assistance of Counsel Standard

In order to gain relief for ineffective assistance of counsel, Petitioner must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). The burden is on Petitioner to establish a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 687). The Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." Apfel, 97 F.3d at 1076.

Counsel's performance is deficient if it falls outside of the "wide range of reasonable professional assistance," although there is a strong presumption that counsel's conduct falls within this broad spectrum. Strickland, 466 U.S. at 689. "Counsel's performance is deficient when it is less competent than the assistance that should be provided by a reasonable attorney under the same

4

circumstances." Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (citing Strickland, 466 U.S. at 687).

**C.     Petitioner's Stated Ground for Relief**

Clanton asserts that his 1995 conviction for second degree assault should not have counted as a predicate violent felony underlying his Armed Career Criminal designation because, after his release from state custody, Minnesota restored his civil rights. He concludes that his defense attorney was ineffective for failing to raise this issue.

Clanton was arrested for second degree assault on July 19, 1995. On October 24, 1995, Clanton pled guilty to second degree assault under Minnesota law. On November 9, 1995, he was sentenced to 48 months in prison, stayed 5 years, and 5 years' probation. His probation was revoked on June 17, 1996, and he was sentenced to 48 months in prison. Clanton was released from prison on September 30, 1998. His sentence was discharged on November 28, 1999. On November 28, 1999, the State of Minnesota, Minnesota Department of Corrections, provided Clanton a Notice of Sentence Expiration and Restoration of Civil Rights. The Notice provided:

> On June 17, 1996, Hennepin County District Court sentenced you to the Commissioner of Corrections. Because that sentence is completed as of November 28, 1999, pursuant to Minnesota Statutes,

Section § 609.165, all of your civil rights and full citizenship, right to vote and hold public office are restored. **However, you are not entitled to ship, transport, possess or receive a firearm until ten (10) years have elapsed from that date and during that time, are not convicted of any other crime of violence.**

Clanton claims that the second degree assault conviction should not have been counted towards his Armed Career Criminal designation in the current case because he committed the current crime on November 20, 2010, more than 10 years after the date of his discharge on November 28, 1999.

### D. The Armed Career Criminal Act

The Armed Career Criminal Act imposes a mandatory minimum 15-year sentence if a defendant violates 18 U.S.C. § 922(g), by possessing in or affecting commerce any firearm or ammunition after having been convicted of a felony, after he "has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e). A "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B).

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

"In order for a conviction to be excludable under § 921(a)(20), the record must show effective and actual restoration of the right to possess firearms. And overlapping firearm prohibitions may prevent the effective and actual restoration of that right." United States v. Sonczalla, 561 F.3d 842, 844 (8th Cir. 2009).

### E. Minnesota Law

Under current Minnesota law, a person who has been convicted of a crime of violence forfeits the right to possess a firearm. Minn. Stat. § 624.713, subd. 1(2) (2012). Generally, "[w]hen a person has been deprived of civil rights by reason of conviction of a crime and is thereafter discharged, such discharge shall restore the person to all civil rights and to full citizenship, with full right to vote and hold office, the same as if such conviction had not taken place." Minn. Stat.

7

§ 609.165, subd. 1 (2012). However, for crimes of violence, unless the person's rights have been restored by judicial order or under federal law,

> [t]he order of discharge must provide that a person who has been convicted of a crime of violence, as defined in section 624.712, subdivision 5, is not entitled to ship, transport, possess, or receive a firearm for the remainder of the person's lifetime.

Id., subd. 1a. Assault in the second degree is a crime of violence. Minn. Stat. § 624.712, subd. 5.

Before 2003, Minnesota law provided that person convicted of a crime of violence could not possess firearms for a period of 10 years following the discharge of his sentence. See Sonczalla, 561 F.3d at 845. In 2003, Minnesota amended the statute to increase the firearms ban from 10 years to the remainder of the person's lifetime. Id. "The lifetime prohibition on possessing . . . . firearms for persons convicted . . . of a crime of violence . . . applies only to offenders who are discharged from sentence or court supervision for a crime of violence on or after August 1, 1993." Minn. Stat. § 624.713, subd. 1. See also Sonczalla, 561 F.3d at 845.

### F. Clanton's Right to Possess a Firearm Has Never Been Restored under Minnesota Law

Clanton's 1995 conviction for second degree assault is not excludable under § 921(a)(20) because Minnesota never restored his right to possess firearms.

### 1. Minnesota's Lifetime Prohibition

Clanton was convicted of second degree assault in 1995. He was discharged from his sentence on November 28, 1999. At that time, he was subject to a ten-year prohibition on possessing a firearm, until November 2009. However, in 2003, Minnesota amended its statute to provide a lifetime prohibition on possessing firearms for those convicted of a crime of violence and discharged from their sentence after August 1, 1993. This 2003 amendment applied to Clanton who, in 2003, became subject to a lifetime ban. Minnesota has never restored Clanton's right to possess a firearm. This analysis is the same regardless of whether Minnesota expressly notified Clanton of the applicability of the lifetime prohibition. See United States v. Collins, 321 F.3d 691, 697 (8th Cir. 2003).

### 2. Overlapping Prohibitions

Regardless of the retroactive effect of Minnesota's lifetime ban on firearms possession on persons who were discharged from sentence for a crime of

violence on or after August 1, 1993, under the very terms of the discharge letter Clanton received in 1999, Minnesota has never restored his right to possess firearms. Based on the state of Minnesota law in 1999, when Clanton was discharged from the second degree assault conviction, he was prohibited from possessing a firearm until 2009. However, before that ten-year prohibition would have expired, Clanton committed another crime of violence, as defined under Minnesota law.

Specifically, on April 25, 2002, Clanton was convicted of third degree sale of a controlled substance, in violation of Minn. Stat. § 152.023, for which he was sentenced to 27 months in prison. (PSI ¶ 41.) Under Minnesota law, that offense was a crime of violence, both when he originally committed it and now. See Minn. Stat. § 624.712, subd. 5 ("'Crime of violence' means: felony convictions of the following offenses: . . . chapter 152 (drugs, controlled substances); and an attempt to commit any of these offenses."); see also Minn. Stat. § 624.712, subd. 5 (2000) ("'Crime of violence' also includes felony violations of the following . . . chapter 152."). As noted in Clanton's discharge letter for the second degree assault conviction, the 10-year firearms ban then in existence was extended because "during that [10-year] time, [Clanton was] convicted of any other crime

of violence." Under Minnesota law in place in 2002, at the time of his 2002 conviction for third degree sale of a controlled substance, he was prohibited from possessing a firearm until ten years after the discharge of his sentence. That sentence was discharged on July 11, 2004, so that the ten-year prohibition extended well past the date of the current offense. Therefore, Minnesota continuously prohibited Clanton from possessing firearms from the date of his second degree assault conviction until the date he committed the current federal offense in 2010. His right to possess a firearm was never restored by Minnesota. See <u>United States v. Dockter</u>, 58 F.3d 1284, 1290-91 (8th Cir. 1995). Therefore, he is not actually innocent of the Armed Career Criminal conviction, and his counsel was not ineffective for failing to raise the issue of his 1995 second degree assault conviction as a predicate offense.

**G.   Clanton's Motion to Amend or Supplement**

Clanton has also filed a motion to amend or supplement his § 2255 petition to add a claim that the revolver that he possessed was manufactured in 1895 and, therefore, does not qualify as a firearm. He further argues that, because the ammunition he possessed was inside a non-qualifying firearm, it does not qualify as ammunition.

The Court denies these additional claims. First, the only "evidence" Clanton provides in support of the proposition that the firearm was manufactured in 1895 is an internet post from person identified by the screen name "ProactiveShooters" on "Just Answer.Com" stating, "According to the list that I have, your serial number was made in 1895." This is wholly inadmissible and unreliable. Moreover, the ATF Report in this case opines that, based on examination of the revolver and reference material provided by the ATF Firearms Technology Branch, the revolver was manufactured between 1905 and 1907. As such it is not an antique firearm. See 18 U.S.C. § 921(a)(16)(A).

In any event, Clanton also pled guilty to possession of ammunition that was manufactured outside the State of Minnesota, which provides an independent basis for his conviction and sentence, regardless of whether the ammunition was located inside or outside of the revolver.

### H. Certificate of Appealability

With regard to the Court's procedural rulings, the Court concludes that no "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" nor would "jurists of reason . . . find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). With regard to the Court's decisions on the

merits, it concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Therefore, the Court denies a Certificate of Appealability in this case.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Petitioner Eugene Maurice Clanton's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [Docket No. 36] is **DENIED**.

2. Petitioner's Motion to Amend or Supplement [Docket No. 45] is **DENIED**.

3. The Court denies a Certificate of Appealability in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: April 19, 2013          s/ Michael J. Davis
                               Michael J. Davis
                               Chief Judge
                               United States District Court